24-4175

# United States Court of Appeals
### *for the*
## Fourth Circuit

---

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

– v. –

CANNON EARL KRESS,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT STATESVILLE

# REDACTED BRIEF OF APPELLANT

H. Justin Pace
H. JUSTIN PACE, LLC
11 Elmwood Lane
Asheville, North Carolina  28803
(704) 840-8387

*Counsel for Appellant*

CP COUNSEL PRESS    (800) 4-APPEAL • (JOB 810994)

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................ ii

STATEMENT OF JURISDICTION ....................................................1

STATEMENT OF THE ISSUES ........................................................1

STATEMENT OF THE CASE ..........................................................2

SUMMARY OF THE ARGUMENTS ..................................................7

ARGUMENT ..............................................................................8

    I.    Standard of Review ............................................................8

    II.    Mr. Kress did not meet the interstate travel definition for purposes of applying the pattern enhancement because he was directed to travel to North Carolina by his employer............................9

    III.    Under *Wooden*, Mr. Kress only engaged in a covered activity on a single occasion/instance for purposes of applying the pattern enhancement ...............................................................13

    IV.    Mr. Kress' plea agreement does not waive his right to challenge the application of the pattern enhancement on appeal...............................................................................17

    V.    The rule of lenity requires ambiguities in the rules applicable to the preceding sections to be interpreted in favor of Mr. Kress ....................................................................................19

CONCLUSION ...........................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*Gall v. U.S.*,
  552 U.S. 38 (2007) ............................................................................8

*Niz-Chavez v. Garland*,
  593 U.S. 155 (2021) ........................................................................20

*U.S. v. Bryant*,
  579 U.S. 140 (2016) ........................................................................15

*U.S. v. Cryar*,
  232 F.3d 1318 (10th Cir. 2000) ................................................ 11, 12

*U.S. v. Edgell*,
  914 F.3d 281 (4th Cir. 2019) ..........................................................17

*U.S. v. Farley*,
  607 F.3d 1294 (11th Cir. 2010) ......................................................11

*U.S. v. George*,
  946 F.3d 643 (4th Cir. 2020) ..........................................................20

*U.S. v. Harvey*,
  791 F.2d 294 (4th Cir. 1986) ..........................................................17

*U.S. v. Hilton*,
  701 F.3d 959 (4th Cir. 2012) ..........................................................19

*U.S. v. Jordan*,
  509 F.3d 191 (4th Cir. 2007) ..........................................................17

*U.S. v. Layton*,
  564 F.3d 330 (4th Cir. 2009) ............................................................8

*U.S. v. Lopez*,
  514 U.S. 549 (1995) ........................................................................10

*U.S. v. Lukashov*,
  694 F.3d 1107 (9th Cir. 2012) ................................................. 11, 12

*U.S. v. Lymas*,
  781 F.3d 106 (4th Cir. 2015) ............................................................8

*U.S. v. McCauley*,
  983 F.3d 690 (4th Cir. 2020) ...............................................................10

*U.S. v. McGuire*,
  627 F.3d 622 (7th Cir. 2010) ............................................... 11, 12, 13

*U.S. v. Mendoza-Mendoza*,
  597 F.3d 212 (4th Cir. 2010) .................................................................8

*U.S. v. Miller*,
  75 F.4th 215 (4th Cir. 2023) .................................................................8

*U.S. v. Perkins*,
  948 F.3d 936 (8th Cir. 2020) ...................................................... 11, 12

*U.S. v. Petties*,
  42 F.4th 388 (4th Cir. 2022) ...............................................................17

*U.S. v. Sheek*,
  990 F.2d 150 (4th Cir. 1993) ..............................................................20

*U.S. v. Strieper*,
  666 F.3d 288 (4th Cir. 2012) ............................................................8, 9

*Wooden v. U.S.*,
  595 U.S. 360 (2022) ................................................................... *passim*

**Statutes & Other Authorities:**

U.S. Const. art. I ....................................................................................10

U.S. Const. art. I, § 8, cl. 3 ...................................................................10

18 U.S.C. § 924(e)(1) ............................................................................15

18 U.S.C. § 2241 .....................................................................................4

18 U.S.C. § 2241(c) ..................................................................... 5, 9, 10, 11

18 U.S.C. § 2242 .....................................................................................4

18 U.S.C. § 2243 .....................................................................................4

18 U.S.C. § 2252A(a)(2)(A) ....................................................................3

18 U.S.C. § 2252A(a)(5)(B) ....................................................................3

18 U.S.C. § 2252A(b)(1).........................................................................3

18 U.S.C. § 2422(b) .................................................................. 2-3, 5, 10

18 U.S.C. § 2423 ...........................................................................9

18 U.S.C. § 2423(b) ............................................................ 5, 9, 10, 11

18 U.S.C. § 3231 ............................................................................1

28 U.S.C. § 1291 ............................................................................1

2023 U.S. Sentencing Guidelines Manual (Nov. 1, 2023) ...................................1

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation
    of Legal Texts (West Group 2011)....................................................18

*Instance*, Black's Law Dictionary 917
    (Bryan A. Garner, ed., deluxe 10th ed. 2014) .......................................15

*Instance*, Webster's New World College Dictionary 740
    (Michael Agnes & David B. Guralnik, eds., 4th ed. 2008) ...............................15

*Occasion*, Webster's New World College Dictionary 997
    (Michael Agnes & David B. Guralnik, eds., 4th ed. 2008) ...............................15

U.S.S.G. § 2B2.2 .........................................................................16

U.S.S.G. § 2G2.2 .................................................................... 9, 13, 15

U.S.S.G. § 2G2.2(b)(5) ................................................................ 4, 9, 13

U.S.S.G. ch. 5, part A....................................................................21

## STATEMENT OF JURISDICTION

The United States District Court for the Western District of North Carolina had jurisdiction over this criminal case under 18 U.S. Code § 3231. The district court sentenced Cannon Earl Kress at a hearing on March 14, 2024 and entered a final, written judgment against Mr. Kress on March 15, 2024.[1]

Mr. Kress timely filed a notice of appeal on March 25, 2024.[2] The Fourth Circuit of the United States Court of Appeals has jurisdiction over Mr. Kress' appeal under 28 U.S. Code § 1291.

## STATEMENT OF THE ISSUES

Mr. Kress raises one issue on appeal: whether the district court properly applied a five-point pattern of activity enhancement in calculating Mr. Kress' Guidelines range, mainly by erring in treating one occasion/instance as two in applying a pattern enhancement that increased Mr. Kress' guidelines range by 67–105 months (6–9 years).[3]

---

[1] JA33–80; JA81–89.
[2] JA90.
[3] 2023 U.S. SENTENCING GUIDELINES MANUAL (Nov. 1, 2023).

## STATEMENT OF THE CASE

Mr. Kress distributed child pornography on October 26, 2022 by uploading five child pornography videos to messaging/chat app Kik.[4] Those videos were downloaded that day by a Boone Police Department detective.[5]



grand jury issued an indictment charging Mr. Kress with violating 18 U.S.C.

---

[4] JA11.
[5] JA11.
[6] JA128 (sealed).
[7] JA128 (sealed).
[8] JA128 (sealed).
[9] JA128 (sealed).
[10] JA128 (sealed).
[11] JA129 (sealed).
[12] JA130 (sealed).

§ 2422(b) (Count One), 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1) (Count Two), and 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(1) (Count Three).[13]

Mr. Kress entered into a plea agreement filed with the court under seal on October 5, 2023.[14] Mr. Kress agreed to plead guilty to Count Two (distribution of child pornography); the United States agreed to move to dismiss Counts One and Three.[15] In that plea agreement, the parties agreed to jointly recommend Mr. Kress' base offense level and a number of enhancements to his offense level.[16] While Mr. Kress agreed to jointly recommend several enhancements, Mr. Kress did **not** agree to the five-level pattern of activity enhancement, and it is not directly addressed in his plea agreement.[17] Rather, the parties reserved their rights to "argue their respective positions regarding any other . . . enhancements."[18] The parties agreed "that either party may seek a departure or variance from the 'applicable guideline range'" for Mr. Kress' sentence.[19] The plea agreement purports to include a waiver of "all rights to contest the . . . sentence in any appeal."[20]

---

[13] JA8–9.
[14] JA91–98 (sealed).
[15] JA91 (sealed).
[16] JA92–93 (sealed).
[17] JA91–98 (sealed).
[18] JA93 (sealed).
[19] JA93 (sealed).
[20] JA96 (sealed).

The Draft Presentence Investigation Report (PSR) prepared by the United States Probation Office applied a five-level pattern of activity enhancement under U.S.S.G. § 2G2.2(b)(5) ███████████████████████████████████████████████████ ███████████████████████████████████. With that five-level enhancement included, Probation calculated Mr. Kress' total offense level to be 38.[22] Probation set Mr. Kress' criminal history score at 0 and his criminal history category at I.[23]

Mr. Kress filed an objection to the Draft PSR making several objections to the statement of relevant conduct and objecting to the five-level pattern of activity enhancement.[24] ████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████

---

[21] JA109 (sealed).
[22] JA110 (sealed).
[23] JA111 (sealed).
[24] JA118–124 (sealed).
[25] JA120 (sealed).
[26] JA120 (sealed).
[27] JA120–122 (sealed).

The government did not file a response to Mr. Kress' objections before Probation filed its Final PSR.[28] The Final PSR retained the five-level pattern of activity enhancement.[29] Over one month after Probation filed its Final PSR, the government filed a response to Mr. Kress' objections (coupled with a sentencing memorandum).[30] The government twice supplemented its sentencing memo.[31]



---

[28] Docket Sheet.
[29] JA135 (sealed).
[30] JA147–163 (sealed).
[31] JA164–168 (sealed); JA169–177 (sealed).
[32] JA153 (sealed).
[33] JA153 (sealed).
[34] JA153 (sealed).

The government's first supplement to its sentencing memorandum was a victim impact statement.[35] The second supplement summarizes business records from Mr. Kress' former employer.[36] The records confirm that Mr. Kress was dispatched to North Carolina by his employer but that he requested the stop in Hickory, North Carolina.[37]

Mr. Kress renewed his objection to the pattern enhancement at his sentencing hearing.[38] ████████████████████████████████████ ████████████████████████████████████, argument focused on whether Mr. Kress' travel to North Carolina could form the basis for the pattern enhancement.[39] Counsel for Mr. Kress noted that Mr. Kress traveled to North Carolina "at the directive of his employer."[40] The government's argument in response made clear the government's position that the pattern enhancement was supported by the combination of online enticement and interstate travel.[41] The trial court overruled Mr. Kress' objection, finding that "the original enticement and then the travel as alleged" formed the basis for the pattern enhancement, given the court's finding "that a motivating reason for the travel was to engage in the

---

[35] JA164–168 (sealed).
[36] JA169–177 (sealed).
[37] JA173.
[38] JA36.
[39] JA36–41.
[40] JA40.
[41] JA40–41.

conduct that he believed and hoped that he was going to engage in."[42] The court did not address the interstate travel aspect of that second activity.

Due to a statutory maximum, the trial court was left with a Guidelines range of 235 to 240 months.[43] The court sentenced Mr. Kress "to be imprisoned for a term of 240 months."[44] The district court entered a written judgment against Mr. Kress, and Mr. Kress timely appealed.[45]

## **SUMMARY OF THE ARGUMENTS**

Mr. Kress raises one issue on appeal: whether a pattern enhancement was properly applied in calculating Mr. Kress' guideline's range. This is because Mr. Kress did not meet the interstate travel requirement necessary for the pattern enhancement because he only crossed state lines at the direction of his employer, a trucking company. His deviation from his assigned route in order to make his arranged meeting with the detective was entirely intrastate. In addition, under the Supreme Court's guidance in *Wooden v. United States*, Mr. Kress' conduct should not have been counted as separate occasions/instances for the purposes of applying the pattern enhancement. His plea agreement should be interpreted to allow him to

---

[42] JA42.
[43] JA44.
[44] JA73.
[45] JA81–89; JA90.

continue to prosecute his arguments regarding the pattern enhancement. And the rule of lenity counsels in favor of all of the above.

## ARGUMENT

### I.    Standard of Review.

This Court "review[s] criminal sentences only 'to determin[e] whether they are "reasonable."'"[46] This Court considers both procedural and substantive reasonableness in reviewing the reasonableness of a sentence.[47] "Procedural reasonableness evaluates the method used to determine a defendant's sentence."[48] This includes a "significant procedural error, such as . . . improperly calculating . . . the Guidelines range."[49] For purposes of determining if there is a procedural error, this Court reviews the district court's legal conclusions de novo.[50] If there is a procedural error, this Court's inquiry ends.[51]

---

[46] *U.S. v. Strieper*, 666 F.3d 288, 292 (4th Cir. 2012) (quoting *Gall v. U.S.*, 552 U.S. 38, 46 (2007)).
[47] *U.S. v. Miller*, 75 F.4th 215, 226 (4th Cir. 2023) (citing *U.S. v. Lymas*, 781 F.3d 106, 111 (4th Cir. 2015)).
[48] *U.S. v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010).
[49] *Gall*, 552 U.S. at 51.
[50] *Strieper*, 666 F.3d at 292 (citing *U.S. v. Layton*, 564 F.3d 330, 334 (4th Cir. 2009)).
[51] *Lymas*, 781 F.3d at 112 (relying on *Gall*, 552 U.S. at 51).

**II.    Mr. Kress did not meet the interstate travel definition for purposes of applying the pattern enhancement because he was directed to travel to North Carolina by his employer.**

The U.S. Probation office incorrectly applied a pattern enhancement to Mr. Kress' Guidelines calculation. The Guidelines provide that a five-level pattern of activity enhancement may be added to a defendant's offense level "[i]f the defendant engaged in a pattern of activity involving the sexual abuse and exploitation of a minor."[52] Per the comments to the Guidelines, a "pattern of activity" is "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant."[53] Sexual abuse or exploitation includes online enticement, "cross[ing] a state line with the intent to engage in a sexual act with a person who has not attained the age of twelve" in violation of 18 U.S.C. § 2241(c), and "traveling with the intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423."[54] 18 U.S.C. § 2423(b) covers "[a] person who travels in interstate commerce . . . with a motivating purpose of engaging in any illicit sexual conduct with another person."[55]

---

[52] U.S.S.G. § 2G2.2(b)(5).

[53] *Id.* § 2G2.2 cmt. n.1.

[54] *U.S. v. Strieper*, 666 F.3d 288, 292–293 (4th Cir. 2012).

[55] 18 U.S.C. § 2423(b).

Our federal government is one of enumerated powers.[56] Lacking the general police power of the states, Congress must be able to point to a power expressly granted to it by the Constitution to justify its lawmaking.[57] Here, that enumerated power is the Commerce Clause, which gives Congress the power "to regulate commerce . . . among the states."[58] The pattern enhancement leverages three relevant federal statutes, 18 U.S.C. § 2422(b) (online enticement), 18 U.S.C. § 2241(c), and 18 U.S.C. § 2423(b) (both interstate travel), that must an include an interstate "hook."[59] Online enticement is interstate due to the nature of the internet and the detective being in a different state than Mr. Kress. It is on the travel aspect that the government's argument runs aground.

Section 2241(c) prohibits "cross[ing] a state line with the intent to engage in a sexual act with a person who has not attained the age of twelve."[60] The government cites to opinions from several other circuits in support of its argument

[black redaction bar]

[black redaction bar]

[black redaction bar]

---

[56] *U.S. v. McCauley*, 983 F.3d 690, 696 (4th Cir. 2020) (relying on U.S. CONST. art. I, § 8; *U.S. v. Lopez*, 514 U.S. 549, 551, 561 (1995)).
[57] *Lopez*, 514 U.S. at 567.
[58] U.S. CONST. art. I, § 8, cl. 3.
[59] *See* JA153 (sealed) (discussing the alleged bases for the pattern enhancement).
[60] 18 U.S.C. § 2241(c).

████████████████████████████[61] The government does not cite any Fourth

Circuit precedents indicating that this Court has adopted that interpretation of

§ 2241(c). Section 2423(b) prohibits "travel[ing] in interstate commerce . . . with *a*

*motivating purpose* of engaging in any illicit sexual conduct with another

person."[62] Assuming *arguendo* that this Court were to adopt the interpretation of

§ 2241(c) pressed by the government, the requirements for the two sections are

similar.

It is undisputed that Mr. Kress crossed state lines traveling in interstate

commerce from Arkansas (where he lived) to North Carolina (where he was

arrested). The relevant question is *why* he crossed those state lines. Mr. Kress was

a long-haul truck driver.[63] His employer dispatched him to deliver a load in South

Carolina, reload in North Carolina, and deliver the second load to Tennessee.[64] His

employer's records indicate that Mr. Kress "requested a stop in Hickory, NC, on

his way to Columbia, TN."[65] That is, his employer's records *only* indicate that Mr.

---

[61] JA157 (sealed) (quoting *U.S. v. Perkins*, 948 F.3d 936, 938 (8th Cir. 2020);
citing *U.S. v. Lukashov*, 694 F.3d 1107, 1119 (9th Cir. 2012); *U.S. v. McGuire*, 627
F.3d 622, 625 (7th Cir. 2010); *U.S. v. Farley*, 607 F.3d 1294, 1335 (11th Cir.
2010); *U.S. v. Cryar*, 232 F.3d 1318, 1324 (10th Cir. 2000)).
[62] 18 U.S.C. § 2423(b).
[63] JA148 (sealed).
[64] JA173 (sealed).
[65] JA173 (sealed).

Kress adjusted his route *within* North Carolina, not that Mr. Kress had any input in the decision to send him to North Carolina.

This simple, but profound, difference distinguishes the present case from the opinions cited by the government below. In *U.S. v. Perkins*, the defendant provided no evidence of "a different predominate purpose for going to Missouri other than" to commit a sex crime.[66] In *U.S. v. Lukashov*, the defendant was also a long-haul trucker, but no evidence was submitted indicating that he did not have control over his routes.[67] Further, the defendant in *Lukashov* committed sex crimes in three different states.[68] In *United States v. Cryar*, while the defendant frequently crossed lines for business purposes, there is no evidence from the face of the opinion that he was traveling on business for the trip on which he was arrested.[69] Further, because the defendant in *Cryer* was in business in partnership with another person in another state, he had substantial control over when and where he traveled across state lines.[70]

Finally, in *United States v. McGuire*, the defendant had "broad latitude concerning the number and location of" his interstate and foreign travel "and he

---

[66] 948 F.3d 936, 940 (8th Cir. 2020).
[67] 694 F.3d 1107 (9th Cir. 2012).
[68] *Id.* at 118.
[69] 232 F.3d 1318, 1320, 1324 (10th Cir. 2000).
[70] *Id.* at 1320.

configured his travels to optimize his sex" crimes.[71] *McGuire* provides a

formulation that, if adopted by this Court, would be dispositive. The *McGuire*

opinion encourages a court "to ask whether, had a sex motive not been present, the

trip would not have taken place or would have differed substantially."[72] Mr. Kress'

trip would not have taken place had he not been directed to drive to North Carolina

by his employer.

**III.    Under *Wooden*, Mr. Kress only engaged in a covered activity on a single occasion/instance for purposes of applying the pattern enhancement.**

The Guidelines provide that the five-level pattern enhancement may be

added to a defendant's offense level "[i]f the defendant engaged in a *pattern of*

*activity* involving the sexual abuse and exploitation of a minor."[73] Per the

comments to the Guidelines, a "pattern of activity" is "any combination of *two or*

*more separate instances* of the sexual abuse or sexual exploitation of a minor by

the defendant."[74] Central to a determination of when the pattern enhancement

applies, then, is determining whether given conduct qualifies as "two or more

separate instances." The Supreme Court of the United States recently examined the

---

[71] 627 F.3d 622, 626 (7th Cir. 2010).

[72] *Id.* at 625 (citations omitted).

[73] U.S.S.G. § 2G2.2(b)(5) (emphasis added).

[74] *Id.* § 2G2.2 cmt. N.1 (emphasis added).

issue of what counts as an "occasion" under the Armed Career Criminal Act (ACCA) in *Wooden v. U.S.*[75]

*Wooden* involved the application of a 15-year mandatory minimum sentence under the ACCA because Wooden "burglarized ten units in a single storage facility" over the course of one evening.[76] The ACCA mandatory minimum for unlawful gun possession applies "when the offender has three or more prior convictions for violent felonies like burglary 'committed on occasions prior to one another.'"[77] Wooden had accessed each successive storage unit by breaking through the drywall separating it from the adjacent unit.[78] The district court and Sixth Circuit accepted the government's argument that the burglary of each separate unit counted as a separate occasion for the purposes of the ACCA.[79]

The Supreme Court rejected that reasoning, instead applying "[t]he ordinary meaning of the word 'occasion.'"[80] Justice Kagan provided the example of a wedding, which we would consider to be a single occasion it includes "multiple, temporally distinct activities" such as "a ceremony, cocktail hour, dinner, and dancing" that "are proximate in time and place," even if they do not take place at

---

[75] 595 U.S. 360 (2022).
[76] *Id.* at 362–363.
[77] *Id.* at 363.
[78] *Id.*
[79] *Id.* at 364–365.
[80] *Id.* at 366.

the same exact time in the same exact place, instead happening close to each other in quick succession.[81] More relevant to the context of a criminal conviction is the example of a defendant who, "'[o]n one occasion, . . . hit his live-in girlfriend on the head with a beer bottle and attempted to strangle her.'"[82] Accordingly, the majority had no trouble in deciding that the defendant's serial storage unit burglaries had taken place on a single occasion.[83]

The logic of *Wooden* may—must—be readily applied to the context of applying the pattern enhancement. The ACCA uses the term "occasion"; the pattern enhancement uses the term "instance."[84] One definition of "occasion" is "a happening; occurrence."[85] "Instance" is defined in one dictionary as a step in proceeding; *occasion* or case."[86] *Black's Law Dictionary* does not define occasion, but its relevant definition of "instance" is "[a]n example or occurrence."[87] The Guidelines make clear the pattern enhancement requires "a separate unit of

---

[81] *Id.* at 367.
[82] *Id.* at 368 (quoting *U.S. v. Bryant*, 579 U.S. 140, 151 (2016)).
[83] *Id.* at 371, 376.
[84] 18 U.S.C. § 924(e)(1); U.S.S.G. 2G2.2 cmt. N.1.
[85] *Occasion*, WEBSTER'S NEW WORLD COLLEGE DICTIONARY 997 (Michael Agnes & David B. Guralnik, eds., 4th ed. 2008).
[86] *Instance*, WEBSTER'S NEW WORLD COLLEGE DICTIONARY 740 (Michael Agnes & David B. Guralnik, eds., 4th ed. 2008) (emphasis added).
[87] *Instance*, BLACK'S LAW DICTIONARY 917 (Bryan A. Garner, ed., deluxe 10th ed. 2014).

experience" because the Guidelines expressly provide the enhancement only applies where there were "two or more separate instances."[88]

The trial court erred by decoupling a single occasion/instance into two or more. More easily disposed of is any argument that Mr. Kress' single trip qualifies as multiple occasions/instances. The government does not make that argument.[89] Instead, the government argued that the pattern of activity was based on Mr. Kress' attempted enticement via his online conversations with the detective and traveling from Arkansas to North Carolina in an attempt to meet the detective.[90] Contrary to the government's assertion, the travel was not separate from the online enticement.[91] Rather than a "substantial gap in time" or "significant intervening events" between the online enticement and the travel,[92] a mere 12 days passed between the initial contact between Mr. Kress and the detective and Mr. Kress' arrest.[93] The online enticement and the travel were "intertwined[,] shar[ing] a common scheme or purpose."[94] As such, they formed a single occasion/instance and the pattern enhancement was incorrectly applied.

---

[88] U.S.S.G. 2B2.2 cmt. N.1.
[89] JA40.
[90] JA154, 157–159 (sealed).
[91] JA40.
[92] *Wooden*, 595 U.S. at 369.
[93] JA128 (initial contact online on October 21, 2022), 130 (arrest on November 2, 2022) (sealed).
[94] *Wooden*, 595 U.S. at 369.

## IV.    Mr. Kress' plea agreement does not waive his right to challenge the application of the pattern enhancement on appeal.

Plea agreements are contracts, or at least "grounded in contract law."[95] As such, this Court "employ[s] 'traditional principles of contract law' as a guide to their interpretation."[96] A thumb is placed on the scale, though. This Court gives plea agreements "greater scrutiny than [it] would apply to a commercial contract" "[b]ecause a defendant's fundamental and constitutional rights are implicated when he is induced to plead guilty by reason of a plea agreement."[97] "As a result, the law governing the interpretation of plea agreements is an 'amalgam of constitutional, supervisory, and private [contract] law concerns,' which 'require holding the Government to a greater degree of responsibility than the defendant' for any 'imprecisions or ambiguities' in those agreements."[98]

The plea agreement Mr. Kress signed includes two, contradictory provisions. The first is that "[t]he parties agree that either party may argue their respective positions regarding any other specific offense characteristics, cross-references,

---

[95] *U.S. v. Edgell*, 914 F.3d 281, 287 (4th Cir. 2019).

[96] *U.S. v. Petties*, 42 F.4th 388, 393 (4th Cir. 2022) (quoting *Edgell*, 914 F.3d at 287).

[97] *U.S. v. Jordan*, 509 F.3d 191, 195–196 (4th Cir. 2007).

[98] *Petties*, 42 F.4th at 393 (quoting *U.S. v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986)).

special instructions, reductions, enhancements, departures, and adjustments to the offense level."[99] The second is that:

> The defendant, in exchange for the concessions made by the United States in this Plea Agreement, waives all rights to contest the conviction and sentence in any appeal or postconviction action. Claims of (1) ineffective assistance of counsel and (2) prosecutorial misconduct, and those claims only, are exempt from the waiver. This waiver precludes the defendant from challenging his conviction or sentence on the basis of any other claim, including but not limited to any claim that the statute(s) to which the defendant is pleading guilty is or are unconstitutional and any claim that the admitted conduct does not fall within the scope of the statute(s).[100]

Under the whole text canon of construction, a legal text must be construed as a whole.[101] The whole text canon naturally leads to more specific canons directly relevant here.[102] Under the harmonious-reading canon, ostensibly conflicting provisions should be instead reconciled.[103] The canon that tells us *how* to reconcile the two above provisions is the general/specific canon.[104] Under the general/specific canon, conflicts between a general provision and a specific

---

[99] JA93 (sealed).
[100] JA96 (sealed).
[101] Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 167–169 (West Group 2011).
[102] *Id.* at 168.
[103] *Id.* at 180–182.
[104] *Id.* at 183–188.

provision are to be resolved in favor of the specific provision.[105] Effectively, the specific provision creates an exception to the general provision.[106]

The applicable *general* provision here is the broad waiver of Mr. Kress' appellate rights, purporting to cover *all* claims except for "ineffective assistance of counsel and . . . prosecutorial misconduct."[107] The specific provision allows the parties to "argue their respective positions regarding any other . . . enhancements."[108] The narrower provision creates a carve-out to the broader waiver of Mr. Kress' appellate rights that allows him to continue to prosecute his argument that the pattern enhancement was incorrectly applied.

## V.    The rule of lenity requires ambiguities in the rules applicable to the preceding sections to be interpreted in favor of Mr. Kress.

The arguments in the three preceding sections are buttressed by the rule of lenity. "[S]pecial considerations govern[ ] the interpretation of criminal statutes," requiring they be "strictly construed and not extend criminal liability beyond that which Congress has plainly and unmistakenly proscribed."[109] Under the rule of

---

[105] *Id.* at 183.

[106] *Id.*

[107] JA96 (sealed).

[108] JA93 (sealed).

[109] *U.S. v. Hilton*, 701 F.3d 959, 966 (4th Cir. 2012) (internal quotation marks omitted).

lenity, "when ambiguity is present in criminal statutes, that ambiguity 'must be resolved in favor of lenity for the accused.'"[110]

The above sections demonstrate the ambiguity in the law. The rule of lenity counsels in favor of interpreting provisions requiring interstate travel with the motive to commit a sex crime as not covering conduct where the defendant only crossed state lines at the direction of his employer. The rule of lenity counsels in favor of treating Mr. Kress' online enticement and subsequent travel a few days later as a single occasion/instance. And the rule of lenity counsels in favor of interpreting Mr. Kress' plea agreement as not waiving his right to appeal the application of the pattern enhancement to his Guidelines calculation.

## CONCLUSION

Mr. Kress' conduct was without a doubt grotesque and vile. The Constitution and the rule of law protect the rights of the grotesque and vile the same as the innocent. "If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them."[111]

Nor is the pattern enhancement a small matter. The trial court's ruling that a pattern enhancement applied to Mr. Kress resulted in an increase to his

---

[110] *U.S. v. George*, 946 F.3d 643, 645 (4th Cir. 2020) (quoting *U.S. v. Sheek*, 990 F.2d 150, 153 (4th Cir. 1993)).
[111] *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021).

recommended sentence under the Guidelines of *67 to 105 months*.[112] That is *5.58 to 8.75 additional years*. If the pattern enhancement had not been applied, Mr. Kress' sentence would likely be over half a decade shorter. A single enhancement resting on so thin a basis should not have so wildly inflated a defendant's sentence.

Because the trial court erred as a matter of law in sentencing Mr. Kress on the basis of an incorrectly applied pattern enhancement, this Court should reverse the trial court and remand for re-sentencing without the pattern enhancement.

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Kress believes that oral argument both is warranted and would be helpful. There is an issue of first impression. And over half a decade of a man's life is at stake.

RESPECTFULLY SUBMITTED, this September 20, 2024.

By s/H. Justin Pace, NCSB 43115
H. Justin Pace, PLLC
Counsel for Defendant
11 Elmwood Lane
Asheville, NC 28803
704.840.8387
justin@paceappeals.com

---

[112] U.S.S.G. ch. 5, part A. The sentencing table provides a Guidelines range of 135–168 months for an offense level of 33 paired with a criminal history category of I and a Guidelines range of 235–293 months if the offense level is adjusted to 38, although the maximum sentence here was 240 months.

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of authorities, statement regarding oral argument, signature block, certifications of counsel, addendum, and any attachments):

   [X] this brief contains [*4,361*] words.

   [  ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2. This brief complies with the typeface and type style requirements because:

   [X] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

   [  ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Date: <u>September 20, 2024</u>              By <u>s/H. Justin Pace</u>
                                            H. Justin Pace, PLLC

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I, H. Justin Pace, certify that on September 20, 2024, I caused this Appellant's Brief and Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Amy E. Ray
> Assistant United States Attorney and Chief of the Appellant Division in the Western District of North Carolina
> *Counsel for Appellee*

I further certify that on this 20th day of September, 2023, I caused a copy of the Sealed Volume of the Joint Appendix to be served, via FedEx, upon counsel for the Appellee, at the above address  and a copy of the Appellant's Brief to be served, via U.S. Mail, postage prepaid, on the Appellant, at the address below:

> Cannon Earl Kress
> Reg. no. 51602-510
> Texarkana FCI
> Federal Correctional Institute
> P.O. Box. 7000
> Texarkana, TX 75505
> *Appellant*

> By <u>s/H. Justin Pace</u>
> H. Justin Pace, PLLC
> *Counsel for Appellant*